Next case is 061322 in Re Sharp. I'm with the law firm of Nixon and Vanderhyde, and I represent Sharp, the appellant, in this case. Basically, this appeal presents the legal question of whether the DuPont decision and the factors that it identified in consideration of likelihood of confusion is still valid law today. DuPont and its progeny have uniformly held that descriptiveness must be considered when likelihood of confusion is being determined. On the other hand, the trademark trial and appeal court has taken the position in this case and in others that if you raise descriptiveness with respect to a prior registration, you are making an impermissible collateral attack on the validity of that registration. Mr. Adams, on that point, is it necessary for us to really, I don't want to poo-poo this, but really worry about it in the sense that can we not either affirm or reverse, which is what you would want, obviously, without addressing this question of whether this was an impermissible collateral attack? I mean, how does it really play in?  You must address this directly because the TTAB looked at two factors in DuPont. With respect to the first factor, they said the marks are different in appearance and sound, but they said that the marks are the same in terms of connotation and commercial impression. Now, I view connotation as meaning, both the meaning of the term and the commercial impression. So you have half of the loaf is given to us. Appearance and sound are different, connotation are the same, but the connotation that's the same is that very fundamental descriptiveness issue. So that is a linchpin of what the TTAB did. Now, the other issue they looked at— But, I mean, you're saying one could not properly say, well, there was an impermissible attack, but still we think that Sharpe should prevail. You say that can't happen here. Well, actually, if this court wants to address the question of our argument that the term toasty is descriptive, and therefore a narrow scope of protection must be given to this prior registration, then yes, this court can do that. Whether this court would want to do that is your decision. I was just trying to see to what extent we really had to wrestle with that issue, and you've answered that. Okay. Isn't the likelihood of confusion really the key? Yes. I mean, that's the whole point, right? Yes. And the DuPont factors are very clear, Your Honor, on this, and it's a standard, de novo standard of review. Let's go to the DuPont factors that are relevant here, and this is 476 F. 2nd, and the relevant page is at page 1361. And this court said, in testing for likelihood of confusion under section 2D, therefore, the following when of record must be considered. Critical language must be considered. Factor number one, the similarity or dissimilarities of the marks in their entireties as to appearance, sound, connotation, and commercial impression. Now, descriptiveness clearly is connotation and commercial impression. Likewise, factor number six, the number and nature of similar marks in use on similar goods, and also number 11. We know all that, but I mean, the board's decision makes a lot of sense. Why don't you explain why it doesn't? I would respectfully disagree. I mean, we know what the factors are. Why doesn't it? I want to mention the last one, because that directly goes to descriptiveness. Number 11, the extent to which an applicant has a right to exclude others from the use of the mark. Now, the board wouldn't consider our descriptiveness arguments in making a determination on connotation and commercial success. By saying that they would not consider the descriptiveness arguments, they are running afoul of DuPont and its progeny. You can't have DuPont be the law and the TTAB say, I am not going to consider descriptiveness in likelihood of confusion because you are attacking the validity of the registration. The two points are irreconcilable. Either the DuPont factors apply, or the board is correct that DuPont is wrong. In National Data Corporation, this court said National was entitled to show, if it could, the cash management in the registered mark was descriptive. So they were entitled to show it. We're saying we're entitled to show it as well. And this court went on, and even looked stronger. And its proof should not be disregarded on the ground that the registration could not be attacked in this proceeding. What the board is doing is contrary to this very language in the National Data Corporation of this court. Likewise, in In Re Clorox, a CCPA decision in 1978, the court said the level of descriptiveness of a cited mark may influence the conclusion that confusion is likely or unlikely. Again, the very factor that the TTAB is relying upon to discount our argument of no likelihood of confusion, which is descriptiveness, is being said by the CCPA to be relevant. More recently, the Federal Circuit in 1986 addressed the issue in bed and breakfast registry. And they reversed a section 2D refusal to register. They said that the term bed and breakfast is not contested to be descriptive. It is. And therefore, they relied upon that as a factor in reversing the board. Here, likewise, there is no argument that Toasty is descriptive. If you look at page, you know, the record is clear. The examiner admitted it at pages 129 to 130, where, A129 to 130. The word Toasty describes the end result of the product that the toaster produces. The board said, A8, the webpages show Toasty in a descriptive fashion. And at A4, the TTAB takes judicial notice of the definition of Toasty as meaning, quote, having the appearance or taste of toast, unquote. Now, I go on to another decision. In 2003, this court said, when marks are identical but neither suggestive nor descriptive of the goods associated with them, the first DuPont factor weighs heavily against the applicant. Here, it's the converse. The term Toasty is descriptive. And therefore, that first factor should weigh heavily in favor of us. So this court in 2003 said, descriptiveness is important under DuPont. In fact, in Majestic Distilling in 2003, the court cited all of the factors that we're relying upon here. Factors 1, 6, and 11, as well as the others. And indeed, Majestic Distilling cited to an earlier Federal Circuit decision Martin's Famous Pastry Shop. And in talking about the marks in dispute there, they were identical, the word Martin. And it went on to say, Martin's is not suggestive or descriptive of either bread or cheese. Again, this court, in line with DuPont, is looking at the descriptiveness of the term when it makes a determination of likelihood of confusion under the DuPont factors. And, you know, I'm not going to beat a dead horse, but this goes way back even beyond earlier than DuPont. We cited Clark Equipment v. Baker Lull. And there, they found no likelihood of confusion because, quote, the similarity of appearance and suggestion arises purely from the descriptive aspects of the marks. Again, in making a decision as to likelihood of confusion, the CCPA, in that decision, looked at descriptiveness, whereas the TTBA says, we will not even look at it because it is attacked on the validity. So my basic point to you today is, you cannot say that DuPont is valid law and affirm this decision below. Likewise... Mr. Adam, the standard review for us for this case would be substantial evidence, isn't it? No, it's de novo, Your Honor. I would submit because it is purely a legal question. What is the legal question? Is it descriptiveness or is it the collateral attack that you've been proposing? I say both of those are legal questions, Your Honor. The legal question is, do you apply the descriptiveness standard of DuPont or do you apply the legal test of the TTAB that descriptiveness is a collateral attack on the validity of the registration? Well, descriptiveness, the way you approached it, in your blue brief at least, was a collateral attack. You somehow switched horses in midstream in your reply brief and started speaking to descriptiveness. Which one is it? I would respectfully disagree, Your Honor. From the very beginning, we have argued in our papers that this cited registration is entitled to only a narrow scope of protection because of the descriptive nature of the term toasty. I believe that that is a proper approach under the DuPont factors 1, 6, and 11 to look at the connotation and meaning, the descriptive nature of the term, and apply it in analyzing likelihood of confusion. Would you like to save your rebuttal time? Yes, Your Honor, I would. Thank you very much. Mr. McManus? May it please the Court, Judge Mayer, your question was dead on here. This is a likelihood of confusion case where the Board's decisions make a lot of sense. What we have is a mark that has been on the register for almost 20 years. That is an incontestable mark that has been in use during that 20-year period. This mark is toasty for toasters, and there would be a likelihood of confusion when using warm and toasty for microwave ovens with toasters. How do we know that? Because the overwhelming evidence in this record supports the Board's findings on the first two and often dispositive DuPont factors. There's been a lot of talk about what DuPont requires. Nowhere in the DuPont factors does it say descriptiveness has to be considered. That's an interpretation that he offers, one, frankly, that's not supported by DuPont itself. And this Court has said in, for example, Dixie Restaurants, Han Beauty, only those factors which are properly put before the Court or the Board need to be considered. Here, where they were properly put before the Board, the Board considered them and handled them correctly. On the first factor, we have dictionary evidence which shows that the term toasty, which is the register term and has been incorporated in its entirety into the applied for mark, has the same meaning as the added term warm, pleasantly or comfortably warm. Moreover, on the second factor, we have substantial evidence here that shows that these goods are virtually identical, that they run in the same trade channels and are sold by the same companies together. So we have a finding of the same connotation in overall commercial pressure on the first factor. We have substantial evidence that supports the finding of the same goods. Those two factors can control on their own. Now, when Sharp properly argued mark weakness, the Board considered it and they rejected it. And that was in the context of the list of six registrations that they put into their reply. Will that be a collateral attack? It is not a collateral attack, Your Honor. An applicant may properly use registrations to show weakness. Now, typically, the better use of registrations, so not only are these registrations on the books, but they're being used. So where we have evidence of same or similar marks on same or similar goods and it's being used, that can be used to show that the term as used in the mark is weak. Now, what's important to also note is, as this Court indicated in national data, there's a difference between saying that a part of a mark, a portion of a mark is weak because it's descriptive and arguing that the entire mark is descriptive. That's footnote eight. There, the Court said you can't do the latter. The former is permissible. Now, notably, they make a lot of— Is that your position? No. I apologize if that's what came across in my answer. A collateral attack is always impermissible. Why? Because it goes to the very registrability of the mark. Even against a weak mark? Correct. I mean, the only—the importance of whether a mark is weak or not goes to its strength. And whether or not there is a likelihood of confusion, it is but one of the factors that goes into the DuPont mix. But even a weak mark can cause confusion, as this Court said in King Candy. And the reason for that is—the reason why we care about whether a mark is weak is, theoretically, if consumers have become so conditioned—and this is the explanation in both the Code, for example— if a consumer has been so conditioned to see the same or similar terms on the same or similar goods, he or she can easily distinguish between similar words and their source, which is why we care ultimately about the usage of the term as a mark. So you can never collaterally attack a mark, whether it's weak or not. Now here, their collateral attack, as was discussed during Appellant's argument, was very clearly a collateral attack. Their first brief, which doesn't really require much review, because it clearly was a collateral attack, as both the examiner and the board found, the real focus of their briefing has been on the reply graph. But it's very clear that any reasonable reading of this brief, which is six pages long, indicates that they are still conducting a collateral attack. There are at least seven collateral attacks here. And as an example, I point direct to A135, where four paragraphs after saying, we're not making a collateral attack, they argue about genericness, and cite all these cases that discuss genericness in a registrability context. Let me ask you just to put in a very short sentence or two. What is the difference between, in your view properly, saying that a mark is weak and improperly saying that a mark, improperly collaterally attacking a mark? Make a statement that does the first and one that does the second. Sure. Now you're saying a weak mark. What would you say there? If one wanted to argue that a mark was weak, one would say the term X has such a commonly understood meaning on these types of goods that the consumers have come to associate that term with these goods. That's a permissible argument. It may not be a viable one, but it's a permissible one. Conversely, you can't say mark X or term X is generic or highly descriptive. Why? Because generic terms, highly descriptive terms can't be trademarks. In other words, you can't say something that would mean, if it was true, it shouldn't have been registered. Correct. That's the essence of the collateral attack doctrine. And we must keep in mind too that the reason we have a collateral attack doctrine is we want these types of arguments to be made in cancellations so that the registrant can participate. Here the board properly drew the line in protecting the interests of the registrant, saying this smacks of a collateral attack, and I'm not going to let it fly. If you want to make it, make it in a cancellation. And notably because this mark is both incontestable under 1065 and way past its five-year cutoff date under 1064, even a descriptiveness argument could not be made in a collateral attack. What if they had made a statement to the effect that the mark is now generic? That would also be a collateral attack because here we're talking about the entire mark. Contrast that perhaps with national data where the court indicated that you could argue a portion of the mark was generic and thus weak. But that footnote says you can't make that argument about the entire mark in an ex parte context. You have to do it in a cancellation proceeding. So here where we have substantial evidence on the first two factors, and the board properly considered and rejected those arguments put before it when made properly, the finding of the board or the conclusion of the confusion here should be affirmed. I'll yield the remainder of my time if any questions. All right. Thank you. Thank you. Mr. Adams? Thank you, Your Honor. I'm going to first address an argument that was raised at the end because I think it's important to point out. Sharp is entitled to make alternative arguments, and if one argument fails, that doesn't mean that another argument does not fail. Because we made an argument that the term is generic, that's not a part of our appeal here, and we are not arguing genericness on appeal. So you must distinguish between the two. But we clearly made two arguments to the board and to the examiner. The other argument was that due to the descriptive nature of Toasty, the prior registration is entitled to only a narrow scope of protection. That is not an impermissible collateral attack on the validity of the registration. That language carefully stated specifically goes to what is the scope of protection to be afforded to the cited registration. In addition to everything else, we put in Internet evidence showing use of the term Toasty in a descriptive sense, and that's why we argue this registration is only entitled to a narrow scope of protection. Secondly, I found it interesting that in response to Judge Gaiars' question, that I believe the patent office is now taking a different position than what it did before, and that is that citing the registration is not a collateral attack. We cited existing registrations to show, again, that the Toasty term has been registered by others and is entitled to just a narrow scope of protection as this court, the CCPA, held in 1974 in the King Candy decision. My second point is that my learned colleague here is taking, I think, a very restrictive view of DuPont. He pointed out that DuPont does not use the word descriptiveness in the three factors that I identified. However, in every single one of the cases that I cited to your honors and quoted, they all used the term descriptiveness as being a permissible item, in fact a mandatory item, to be considered under the three factors that I identified. And finally, I think a statement must be made with respect to footnote 8 of the national data decision. I believe that my colleague is misstating what footnote 8 says, and I direct you to carefully read it. Footnote 8 says that a generic attack, a genericness attack, is an impermissible collateral attack. It does not state that descriptiveness is an impermissible attack. And bearing in mind all of the progeny of DuPont that specifically talk about looking at descriptiveness in determining the scope of protection, I respectfully submit that Sharp did not improperly engage in a collateral attack on the Toastie registration when it asked the board to consider the descriptiveness of the term Toastie in this matter. And so I ask... Thank you. Thank you very much. Thank you, Your Honor. Case is submitted.